Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| POPULAR AUTO LLC, UNIVERSAL INSURANCE COMPANY  Parte Apelante  v.  ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS  Parte Apelada | TA2026AP00280 | *APELACIÓN* Procedente del Tribunal de Primera Instancia, Sala de Mayagüez  Caso núm.: MZ2024CV01072  Sobre: Impugnación de Confiscación |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de junio de 2026.

El 18 de marzo de 2026, Universal Insurance Company y Popular Auto (en adelante, la parte apelante) presentaron ante nos un *Recurso de Apelación* en la que solicitaron que revoquemos una *Sentencia* emitida el 15 de enero de 2026, notificada el 20 de enero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario).[1]

En el aludido dictamen, el foro primario declaró No Ha Lugar la *Demanda* sobre Impugnación de Confiscación interpuesta por la parte apelante.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El caso de epígrafe tuvo su origen cuando el 27 de junio de 2024, la parte apelante instó una *Demanda* en la que alegó que, fue informada que el automóvil marca Mitsubish Mirage G4, año 2023

---

[1] Entrada núm. 23 del caso núm. MZ2024CV01072 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

fue confiscado por el Estado Libre Asociado de Puerto Rico por conducto del Secretario de Justicia y el Superintendente de la Policía (la parte apelada) en Mayagüez, Puerto Rico.[2] Dicho vehículo tenía un gravamen anotado en favor de Popular Auto y estaba asegurado bajo una póliza expedida por Universal Insurance Company. Arguyó que, la confiscación fue contraria a la *Ley Uniforme de Confiscaciones de 2011*, Ley Núm. 119 de 12 de julio de 2011, según enmendada, 34 LPRA sec. 1724, *et. seq,* (Ley Núm. 119-2011) tras no haberse cumplido con los requisitos establecidos en el citado artículo y no habérsele notificado sobre la confiscación. Igualmente, añadió que, el vehículo confiscado no fue utilizado para cometer algún delito. En adición, adujo que, es aplicable la doctrina de tercero inocente.

En respuesta, el 1 de agosto de 2024, la parte apelada radicó una *Contestación a demanda* en la que ripostó que, las confiscaciones ostentan una presunción de legalidad y corrección.[3] Por otro lado, señaló que, la parte apelante tenía que demostrar que tenía legitimación activa para impugnar la confiscación del vehículo, lo cual la parte apelante no había demostrado. A su vez, sostuvo que, la parte apelante no le es aplicable la doctrina de tercero inocente toda vez que, no cumplió con los requisitos jurisprudenciales sobre ello. Por tanto, solicitó que, el TPI declarase No Ha Lugar la *Demanda.*

El 8 de agosto de 2024, el foro primario emitió una *Orden de vista de legitimación activa* en la que calendarizó la celebración de una vista de legitimación activa para el 4 de noviembre de 2024.[4]

---

[2] Entrada núm. 1 del caso núm. MZ2024CV01072 en el SUMAC.
[3] Entrada núm. 6 del caso núm. MZ2024CV01072 en el SUMAC.
[4] Entrada núm. 7 del caso núm. MZ2024CV01072 en el SUMAC.

Celebrada la vista, el TPI remitió una *Sentencia Parcial* en la que declaró Ha Lugar la solicitud de desistimiento, sin perjuicio, requerida por Universal Insurance Company.[5]

Con respecto a la vista de legitimación activa, el TPI emitió una *Resolución y orden* en la que tras evaluar ambas posturas le confirió legitimación activa a Popular Auto.[6]

Tras varios incidentes procesales, el 6 de marzo de 2025, las partes presentaron un *Informe preliminar de conferencia con antelación al juicio* en la que estipularon los siguientes documentos y hechos:

> Hechos Estipulados:
> 1. El 10 de mayo de 2024, el Estado Libre Asociado ocupó el vehículo marca Mitsubishi Mirage G4 del año 2023 con número de tablilla KBW-710 para solicitar una Orden de registro y Allanamiento.
> 2. La Orden de registro y Allanamiento fue liberada por el magistrado Luis Padilla Galiano el 13 de mayo de 2024.
> 3. El Diligenciamiento e Inventario fue juramentado ante un magistrado el 14 de mayo de 2024 por el agente Radamés Miranda Pérez.
> 4. El 24 de mayo de 2024, se emitió la orden de Confiscación por alegadamente haber sido utilizado en violación del Artículo 6.09 y 6.22 de la Ley 168, los Artículos 401, 412 y 5.12 de la Ley de Sustancias Controladas, en Mayagüez, Puerto Rico.
> 5. La unidad fue tasada en $18,000.00.
> 6. El vehículo de motor no fue reportado como hurtado.
> 7. El vehículo de motor no es de arrendamiento a corto plazo. La notificación de la confiscación se realizó mediante carta certificada con acuse de recibo, depositada en el correo postal el 7 de junio de 2024.
>
> Documentos Estipulados:
> 1. Carta de Notificación de la confiscación.
> 2. Orden de Confiscación.
>
> Documentos Estipulados Sólo Autenticidad:
> 3. Dos documentos de Certificación prueba de funcionamiento (PPR-876).
> 4. Orden de registro y allanamiento librada por el magistrado.
> 5. Diligenciamiento e inventario debidamente juramentado.
> 6. Denuncias presentadas por infracción a los arts. 401 y 412 de la Ley de Sustancias Controladas.
> 7. Denuncias presentadas por infracción a los arts. 6.09y 6.22 de la Ley de Armas.

Así la cosas, el 5 de noviembre de 2025, fue celebrado el juicio en su fondo.[7] Durante el juicio, el Agte. Ángel Vargas Cruz (Agte.

---

[5] Entrada núm. 11 del caso núm. MZ2024CV01072 en el SUMAC.
[6] Entrada núm. 12 del caso núm. MZ2024CV01072 en el SUMAC.
[7] Entrada núm. 22 del caso núm. MZ2024CV01072 en el SUMAC.

Vargas Cruz) testificó que, el 10 de mayo de 2024, se estaba diligenciando una orden de registro y allanamiento en el residencial Cuesta Las Piedras, Edificio 17 contra el señor Cristian O'Neill Meléndez (el señor O'Neill Meléndez) tras alegadamente infringir la Ley de Sustancias Controladas y la Ley de Armas.[8] Indicó que, terminado el diligenciamiento en la propiedad del señor O' Neill Meléndez, un can de la Policía, adiestrado en armas de fuego y de sustancias controladas, fue utilizado para detectar sustancias y armas en la propiedad.[9] Tras allanar la propiedad, el Agte. Vargas Cruz declaró que, cuando un agente fue a "montar" en el vehículo al can, este arrojó una alerta positiva a un vehículo que estaba frente a la propiedad del señor O'Neill Meléndez, el cual era propiedad de este.[10] Ante ello, el Agte. Vargas Cruz sostuvo que, le informó al fiscal de turno y procedieron a remolcar el vehículo en aras de diligenciar una orden de registro y allanamiento.[11] Aclaró que, no habían motivos para llevar al can al vehículo toda vez que, cuando se estaba llevando al can a su jaula dentro del vehículo se dirigió hacia dicho vehículo.[12] En esa línea, esbozó que, en todos los allanamientos de sustancias controladas y drogas se utiliza un can de la Policía.[13] Aclaró que, el apartamento estaba ubicado en el primer piso, cuando salieron del apartamento, el can "pasó entre medio de los vehículos-entre ellos el carro confiscado- y en ese instante el can "halo" hacia el vehículo.[14] Informó que, durante la intervención fue arrestado el señor O'Neill Meléndez y su novia.[15] Asimismo, concluyó que, no se había recibido una confidencia sobre el vehículo.[16] Testificó que, dentro del vehículo se ocupó *crack*, balas

---

[8] Transcripción de la prueba oral (TPO) del juicio celebrado el 5 de noviembre de 2025, pág. 9; líneas 23-24; TPO, pág. 10; líneas 1-9.
[9] *Íd.*, pág. 10; líneas 9-13.
[10] *Íd.*, pág. 10; líneas 18-22.
[11] *Íd.*, pág. 10; líneas 22-24; *Íd.*, pág. 11; líneas 2-6.
[12] *Íd.*, pág. 11; líneas 20-24; *Íd.*, pág. 12; líneas 1-2.
[13] *Íd.*, pág. 12; líneas 21-23.
[14] *Íd.*, pág. 14; líneas 16-22.
[15] *Íd.*, pág. 13; líneas 19-22.
[16] *Íd.*, pág. 15; líneas 5-9.

de rifle, un AKA-47, diversos cargadores de tambor, pistola, rifle 22 y municiones de varios calibres y cargadores de pistola *Glock*.[17]

Por otro lado, el Agte. Radamés Miranda Pérez (Agte. Miranda Pérez) resaltó que, cuando salió del apartamento observó que se estaba sellando el vehículo Mitsubishi y, el vehículo fue trasladado hacia la División de Drogas y Vicios de Mayagüez.[18] Informó que, el vehículo confiscado fue custodiado y estuvo bajo vigilancia mediante cámaras de seguridad.[19] Declaró que, tras recibir la orden de registro y allanamiento se cercioró que dicho vehículo tuviera, las firmas, ponches e identificación, el Agte. Vargas le indica cual era el vehículo, y verificó que los sellos estuvieran inalterados.[20] Luego, testificó que, procedió a registrar el vehículo y encontró decks de heroína, varias armas de fuego, cargador extendido y otras sustancias controladas.[21] Luego, el Agte. Miranda Pérez indicó que, procedió a hacer un inventario sobre lo que encontró en el vehículo.[22]

Evaluada la evidencia ante sí, el foro primario se pronunció sobre el asunto, el 20 de enero de 2026 tras emitir una *Sentencia* en la que razonó que, el Agte. Vargas Cruz presenció cuando el can se dirigía a ser guardado en un vehículo oficial de la Policía, empero, en dirección a dicho vehículo dio una alerta acerca del carro confiscado.[23] Así, el vehículo fue debidamente registrado, tras un Juez ordenar el registro y allanamiento, en la que se encontraron múltiples sustancias controladas y armas de fuegos obtenidas ilegalmente. Consecuentemente, el *foro a quo* determinó que, la parte apelante no logró demostrar que es aplicable la doctrina de tercero inocente y no logró rebatir la presunción de legalidad.

---

[17] *Íd.*, pág. 39; líneas 17-21.
[18] *Íd.*, pág. 48; líneas 2-10.
[19] *Íd.*, pág. 48; líneas 10-13.
[20] *Íd.*, pág. 49; líneas 12-24 *Íd.*, pág. 50; líneas 1-2.
[21] *Íd.*, pág. 50; líneas 5-18.
[22] *Íd.*, pág. 53; líneas 2-6.
[23] Entrada núm. 23 del caso núm. MZ2024CV01072 en el SUMAC.

Igualmente, resaltó que, la doctrina de tercero inocente la puede invocar el dueño del vehículo confiscado. En adición, resolvió que, cuando el vehículo fue ocupado, el vehículo no estaba reportado como hurtado ni el dueño del vehículo incurrió en medidas para evitar que su vehículo se empleara para fines ilícitos. Por tanto, declaró No Ha Lugar la *Demanda*.

Insatisfecha, el 2 de febrero de 2026, la parte apelante instó una *Moción de reconsideración* en la que refutó que, la parte apelada no demostró con prueba que el can cumpliera con las certificaciones para "marcar" el vehículo confiscado.[24] Además, alegó que, la parte apelante no tenía motivos fundados para ocupar el vehículo. Así, el registro del vehículo fue ilegal e improcedente. Por ende, inquirió que el foro primario reconsiderase el dictamen apelado debido a que no había una orden legal y válida para registrar dicho vehículo.

El 18 de febrero de 2026, el TPI emitió una *Resolución Interlocutoria*, notificada el 23 de febrero de 2026, en la que resolvió que se sostendría en su dictamen por los fundamentos expuestos en la *Sentencia* y, por tanto, declaró No Ha Lugar la *Moción de reconsideración*.[25]

Inconforme con el dictamen, el 18 de marzo de 2026, la parte apelante presentó un *Recurso de Apelación* en el que coligó el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia, Sala de Mayagüez al declarar No Ha Lugar la Demanda de impugnación de confiscación y al determinar que la parte demandante no logró rebatir la presunción de corrección y legalidad que cobija las confiscaciones según las disposiciones de la Ley Núm. 119-2011.

En cumplimiento con nuestra *Resolución*, el 23 de marzo de 2026, la parte apelante radicó una *Moción sometiendo la transcripción de la prueba oral* en la que anejó la transcripción del juicio en su fondo. Luego, el 4 de mayo de 2026, la parte apelante

---

[24] Entrada núm. 24 del caso núm. MZ2024CV01072 en el SUMAC.
[25] Entrada núm. 25 del caso núm. MZ2024CV01072 en el SUMAC.

instó un *Alegato Suplementario*. Finalmente, el 28 de mayo de 2026, la parte apelada compareció ante nos mediante la presentación de un *Alegato* en el que fundamentó su oposición a que revoquemos la *Sentencia* apelada.

Evaluada la totalidad de la prueba oral y las posturas de ambas partes, procederemos a resolver el recurso ante nuestra consideración.

**II.**

**A.**

Es harto conocido que, existe el derecho estatutario de acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Es norma reiterada que, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015). Como corolario de lo anterior, al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013). Así pues, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza el foro primario. *McConnell Jiménez v. Palau*, 161 DPR 734, 750 (2004). Bajo el crisol doctrinario, los jueces del Tribunal de Primera Instancia están en mejor posición para aquilatar la prueba

testifical tras tener oportunidad de ver, escuchar y apreciar el comportamiento de un testigo. *Santiago Ortiz v. Real Legacy Assurance Company, Inc.*, 206 DPR 194, 219 (2021); *Penna Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1025 (2024); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

Ello, como Tribunal de Apelaciones, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Dávila Nieves v. Meléndez Marín, supra*, pág. 770.

No obstante, la deferencia judicial no es absoluta. El Tribunal Supremo ha reiterado que, ésta cede si en las determinaciones del foro de instancia medió pasión, prejuicio, parcialidad o error manifiesto. *W.M.M. P.F.M., et al. v. Colegio et al., supra*, pág. 903; *Dávila Nieves v. Meléndez Marín, supra*, pág. 771; *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Es decir, la norma de deferencia encuentra su excepción cuando se demuestra que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012). En adición, debemos intervenir cuando la apreciación de la prueba no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la apreciación de la prueba se distancia de la realidad fáctica, tenemos la obligación de intervenir. *Santiago Ortiz v. Real Legacy Assurance Company, Inc., supra*, pág. 219. Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). De modo que, el Tribunal Supremo ha expresado: "[l]a intervención con la evaluación de la prueba testifical procedería en casos en los que luego de un análisis integral de la

prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Rosado Muñoz v. Acevedo* Marrero, 196 DPR 884, 917-918 (2016). Por tanto, "[c]uando la evidencia directa de un testigo le merece entero crédito al juzgador de hechos, ello es prueba suficiente de cualquier hecho". *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012).

Se entiende que la *discreción* es tener el poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción. *García v. Asociación*, 165 DPR 311, 321 (2005). No obstante, el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad. *Íd.* En cuanto al abuso de discreción, el Tribunal Supremo ha señalado que se intervendrá, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211-212 (1990).

Por tanto, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, *supra*.

En cuanto al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 782. Por tanto, la norma general es que, si la actuación del TPI no está desprovista de una base razonable y no perjudica los derechos sustanciales de las partes, debe prevalecer su criterio. *Sierra v.*

*Tribunal Superior,* 81 DPR 554, 572 (1959). Ante una alegación de pasión, prejuicio o parcialidad, los foros apelativos debemos evaluar si el juez o la jueza cumplió su función judicial de adjudicar la controversia específica conforme a derecho y de manera imparcial, pues solo así podremos descansar con seguridad en sus determinaciones de hechos. *Dávila Nieves v. Meléndez Marín, supra,* pág. 777. También, el prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra,* págs. 770-771.

**B.**

Nuestra Constitución y la Constitución de Estados Unidos, contienen disposiciones que protegen a los ciudadanos contra registros y allanamientos irrazonables en el hogar, vehículos, efectos personales o propiedad en el que el ser humano albergue una expectativa razonable de intimidad. *Pueblo v. Álvarez De Jesús,* 214 DPR 753, 764 (2024), citando a: *Pueblo v. López Colón,* 200 DPR 273, 283 (2018). La Sec. 10 del Artículo II de la Constitución de Puerto Rico, LPRA, Tomo 1 (Const. PR), establece que:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar o registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

Los objetivos que permea la garantía ante una intervención injustificada del Estado promueve tres (3) objetivos: (1) "proteger la

intimidad y dignidad de los seres humanos, (2) amparar sus documentos y otras pertenencias, e (3) interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad en la intrusión". *Pueblo v. Rolón Rodríguez,* 193 DPR 166, 175 (2015). Ante ello, nuestra Constitución establece los parámetros mínimos que deben seguir los agentes del Estado ante un registro contra cualquier persona. *Pueblo v. Álvarez De Jesús, supra,* pág. 766. Ahora bien, respondiendo al aspecto procesal, la causa probable para que proceda una orden de registro y allanamiento debe estar fundamentado en un juramento o afirmación, una orden que conste la "descripción detallada del lugar, los objetos o las personas que habrán de ser registrados, así como en requerir la interposición de un magistrado". *Pueblo v. Álvarez De Jesús, supra,* pág. 766; *Pueblo v. Rolón Rodríguez, supra,* pág. 175. La evidencia que se obtenga en violación a dichas exigencias sería inadmisible en un Tribunal. Art. II, Sec. 10, Const. P.R, *supra.* Por tanto, en aras de salvaguardar los derechos de las personas, en este tipo de intervención se requiere una orden de registro y allanamiento apoyada en una determinación de causa probable. *Pueblo v. Báez López,* 189 DPR 918, 928 (2013); *Pueblo v. Salamanca Corchado,* 210 DPR 582, 591 (2022). Por otro lado, cuando se efectúa un registro sin una orden de allanamiento, el Ministerio Público tiene el deber de rebatir la presunción de que fue irrazonable demostrando que existían circunstancias excepcionales que resultaron innecesarias obtener la orden. *Pueblo v. Báez López, supra,* pág. 930; *Pueblo v. Álvarez De Jesús, supra,* pág. 769. En *Pueblo v. Álvarez De Jesús, supra,* pág. 769, el Tribunal Supremo resaltó que, a modo de excepción un Policía puede efectuar un registro sin orden de mediar las siguientes circunstancias:

> "(1) un registro incidental a un arresto legal [...]; (2) un registro consentido voluntariamente de forma expresa o implícita [...]; (3) un registro en situación de emergencia [...]; (4) una evidencia ocupada en el transcurso de una

persecución [...]; (5) una evidencia a plena vista [...]; (6) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo a través del olfato[...]; (7) una evidencia arrojada o abandonada; (8) un registro o allanamiento de una estructura abandonada; (9) una evidencia obtenida durante un registro administrativo[...], siempre que se cumpla con las limitaciones expresadas por este Tribunal en *Blassini et als. v. Depto. Rec. Naturales*, 176 DPR 454, 463–464 (2009)]; (10) un registro tipo inventario, [o] (11) una evidencia obtenida en un lugar público —como el aeropuerto— como resultado de la utilización de canes para olfatear [...]".

Empero, estas excepciones no operan de forma automática y deben evaluarse conforme a la totalidad de los hechos específicos de cada caso. *Pueblo v. Báez López, supra*, pág. 930; *Pueblo v. Álvarez De Jesús, supra*, pág. 769. Ahora bien, cuando una parte invoque que se le violentó un derecho constitucional al amparo de la Sec.10 del Art. II de nuestra Constitución, *supra*, el Tribunal está llamado a determinar si el registro infringió la expectativa razonable de intimidad que se le reconoce a los individuos. *Pueblo v. Apolinar Rondón*, 2025 TSPR 113. En esa línea, la actuación del Estado puede sostener dado que no procede la protección constitucional ante la ausencia de una expectativa de intimidad. *Pueblo v. Apolinar Rondón, supra.*

Conviene resaltar que, el examen de olfato de un canino no justifica el registro final sin una orden judicial o sin que concurra alguna de las excepciones al registro sin una orden. *Pueblo v. Díaz, Bonano*, 176 DPR 601, 633 (2009). En *Pueblo v. Díaz, Bonano, supra*, pág. 638, la marca positiva de un can entrenado para detectar sustancias controladas puede "producir una sospecha individualizada razonable (si no se tenía) o corroborarla". De un can arrojar positivo, sin mediar orden, debe evaluarse la totalidad de las circunstancias si dicha sospecha es suficiente para incautar un objeto de una persona que alberga una expectativa de intimidad. *Pueblo v. Díaz, Bonano, supra*, pág. 638.

En armonía con ello, la Orden General Núm. 100-116 del 13 de enero de 2023, pág. 3 (Orden Núm. 100-116) dispone que la

División Canina prestará servicios a otras divisiones del NPPR cuando sea necesario. La Sección F de la Orden General Núm. 100-116, *supra*, rige todo lo relacionado al entrenamiento de los caninos.

**C.**

La confiscación es "[e]l acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de ciertos delitos". *Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico*, 2026 TSPR 36; *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, 211 DPR 455, 463 (2023); *Figueroa Santiago et als. v. ELA*, 207 DPR 923, 929 (2021); *Rodríguez Ramos v. ELA*, 174 DPR 94, 202 (2018); *Doble Seis Sport v. Depto. Hacienda*, 190 DPR 763, 784 (2014). El Gobierno puede confiscar toda propiedad que resulte, sea producto o se emplee para la comisión de delitos graves, al igual que los menos graves siempre que estén tipificados como delito en el Código Penal de Puerto Rico o cualquier estatuto que autorice la confiscación. *supra* sec. 1724f; *Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico*, *supra*. Durante una confiscación se debe cumplir con las garantías mínimas del debido proceso de ley. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, *supra*, pág. 463. El procedimiento de confiscación está regulado por la por la Ley Núm. 119-2011, *supra*, el cual es un acto para el beneficio de la sociedad de las personas que han sido perjudicadas por las acciones delictivas. *Centeno v. Rodriguez v. ELA*, 170 DPR 907, 912-913*; Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, *supra*, pág. 467. El procedimiento de una confiscación es de carácter civil o *in rem. Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico*, *supra; Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, *supra; Centeno v. Rodriguez v.*

*ELA, supra,* pág. 913. Ello, pues va dirigido en contra del objeto y no contra el dueño o la persona con algún interés legal sobre el bien. *Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico, supra; Cooperativa v. ELA,* 159 D.P.R. 37 (2003). La naturaleza in rem permite que los procesos de confiscación se lleven a cabo y concluyan antes de que se acuse, declare culpable o se absuelva al acusado. *Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico, supra.* Para que se configure una confiscación civil son: (1) de prueba suficiente y preponderante de que se ha cometido un delito, y (2) de un nexo entre la comisión del delito y la propiedad confiscada. *Suárez v. ELA,* 162 DPR 43, 52 (2004); *Doble Seis Sport v. Depto. Hacienda, supra,* pág. 785. El Art. 9 de la Ley Núm. 119-2011, *supra* sec. 1724f, dispone que estará sujeta de ser confiscada los siguientes bienes:

> Estará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación. Toda propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada a favor del Gobierno de Puerto Rico.

Ahora bien, toda persona que desee impugnar la validez de una confiscación debe regirse por lo establecido en el Art. 15 de Ley Núm. 119-2011, *supra* sec. 1724l. En virtud de ello, toda persona que desee impugnar una confiscación deberá hacerlo en el término de treinta (30) días, a partir de la fecha en que reciba la notificación de la confiscación, a través de la presentación de una demanda en contra del Estado Libre Asociado de Puerto Rico y del funcionario que llevó a cabo la ocupación. *supra* sec. 1724l; *Doble Seis Sport v. Depto. Hacienda, supra,* pág. 786*; Universal Insurance Company v.*

*Estado Libre Asociado de Puerto Rico, supra,* pág. 467. Particularmente, las personas que fuesen notificados de una confiscación y son dueños, pueden radicar una Demanda contra el Estado para impugnar la confiscación. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico, supra,* pág. 467. La demanda se circunscribirá a cumplir con los siguientes términos:

> La demanda que al amparo de esta Ley se autoriza, estará sujeta estrictamente a los siguientes términos: el Tribunal ante el cual se haya radicado el pleito deberá adjudicarlo dentro del término de seis (6) meses contados desde que se presentó la contestación a la demanda, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes y por causa justificada, por un término que no excederá de treinta (30) días adicionales; se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos. El demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación. El descubrimiento de prueba se llevará a cabo dentro de los primeros treinta (30) días contados a partir de la contestación a la demanda y no se extenderá a las declaraciones juradas que obren en el expediente del fiscal hasta que se tenga derecho a las mismas en alguna acción penal que exista relacionada a los hechos de la confiscación.

Una vez presentada la contestación a la demanda, el Tribunal deberá calendarizar la celebración de una vista de legitimación activa para determinar si "el demandante ejercía dominio y control sobre la propiedad en cuestión antes de los hechos que motivaron la confiscación. De no cumplir con este requisito, el Tribunal ordenará la desestimación inmediata del pleito". *supra* sec. 1724l.

Es necesario destacar que, la confiscación se presume legal y "corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos". *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico, supra,* pág. 467; *supra* sec. 1724l. Con ello, la Regla 301 de Evidencia de 2009, 32 LPRA, Ap.VI, R. 301, define una presunción como "una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. A ese hecho o grupo de hechos previamente establecidos se les denomina hecho

básico. Al hecho deducido mediante la presunción, se le denomina hecho presumido". El estatuto le asigna al demandante el "el peso de la prueba para derrotar la legalidad de la confiscación". *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico, supra,* pág. 467; *supra* sec. 1724l. El demandante tiene que demostrar, mediante preponderancia de la prueba que la propiedad confiscada no fue empleada para una actividad o acto ilegal. *Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico, supra.* Si el demandante no demuestra prueba para rebatir el hecho básico, el juzgador tiene la obligación de dar por probado el hecho presumido. *Consejo Tit. v. Rocca Dev. Corp. et als.*, 2025 TSPR 6, 215 DPR ____ (2025). La procedencia de una confiscación in rem se sustenta de cumplirse con los siguientes requisitos: "(1) que exista prueba suficiente y preponderante de que se ha cometido un delito, y (2) que exista un nexo entre la comisión del delito y la propiedad confiscada". *Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico, supra.*

Es preciso señalar que, en caso de que el Tribunal decrete ilegal la confiscación, el Art. 19 de la Ley Núm. 119-2011, *supra* sec. 1724p, estatuye que,

> En aquellos casos en los que el tribunal decrete la ilegalidad de una confiscación, la Junta devolverá la propiedad ocupada al demandante. Cuando haya dispuesto de la misma, el Gobierno de Puerto Rico le pagará el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido, la que resulte mayor, más el interés legal prevaleciente, de conformidad con las Reglas de Procedimiento Civil, según enmendadas, tomando como base el valor de tasación, a partir de la fecha de la ocupación.

En lo que nos atine, en el caso *Doble Seis Sport v. Depto. Hacienda, supra,* atendió una controversia en la que la parte que impugnó una confiscación también solicitó que se le indemnizara en concepto de daños y perjuicios. Particularmente, el Tribunal Supremo interpretó que,

> [E]s evidente que el reconocimiento de una acción en daños y perjuicios dentro de un procedimiento de impugnación de confiscación desvirtuaría el proceso sumario que el legislador

diseñó. Es decir, dentro de *ese* proceso sumario no se puede litigar una acción en daños y perjuicios. El legislador tuvo dos propósitos al establecer la nueva ley. Primero, se propuso dar fin a los procedimientos dilatorios y evitar que los tribunales continúen congestionados por las demandas de impugnaciones de confiscaciones. *Doble Seis Sport v. Depto. Hacienda, supra*, pág. 792.

Ante ello, el máximo foro judicial resolvió que, la Ley Núm. 119-2011, *supra*, no permite una acción de daños y perjuicios como remedio para una confiscación ilegal fundamentada en que no procedía la ocupación de la propiedad. Cónsono con lo anterior, la acción de daños y perjuicios no está permitida dentro del proceso de impugnación dado que no se le daría la efectividad a la intención legislativa. *Doble Seis Sport v. Depto. Hacienda, supra*, pág. 793.

**III.**

En el caso de autos, la parte apelante alegó que el TPI erró en permitir la confiscación del vehículo toda vez que, logró rebatir la presunción de corrección y legalidad establecida en la Ley Núm. 119-2011, *supra*. En esa línea, argumentó que, el registro fue uno ilegal puesto que un can olfateó un carro que no estaba sujeto a una orden de registro y allanamiento.

Nos corresponde examinar si en efecto la parte apelante rebatió dicha presunción y si se violentó la garantía constitucional contra los registros y allanamientos irrazonables. Veamos.

A tenor con el marco jurídico expuesto, nuestra Constitución, *supra*, garantiza el derecho a que las personas no seamos sujeto de registros y allanamientos arbitrarios sobre los bienes en los que albergamos una expectativa razonable de intimidad. No obstante, el Estado de tener motivos fundados para incautar algún objeto de una persona debido a que se está empleando para fines ilícitos o es sujeto de una investigación en curso, el Estado debe comparecer ante un Juez en búsqueda de una orden para diligenciar el registro y allanamiento sobre el bien que interesa. En la mencionada orden, el Estado debe describir los bienes que desea incautar, lugar en que

se encuentran y su propósito en aras de demostrar que hay una causa probable sobre ello. De no mediar una orden y el Estado incauta bienes, estos serán inadmisibles en evidencia ante un Tribunal. Ahora bien, como excepción, en limitadas circunstancias el Estado puede hacer un registro sin una orden de registro y allanamiento. Jurisprudencialmente, el alto foro judicial ha resuelto que, cuando un examen de olfato de un canino arroja indicios a algún hecho o resultado delictivo, puede conducir a un registro. *Pueblo v. Díaz, Bonano, supra*, pág. 638. Empero, el registro no justifica el registro sin una orden judicial o de no mediar las circunstancias establecidas en nuestra jurisprudencia. Tal como señalamos en nuestra segunda parte, reiteramos el dictamen del Tribunal Supremo en *Pueblo v. Díaz, Bonano, supra*, pág. 638, en el que indicó que, cuando un can arroje positivo, sin mediar orden, debe considerarse la totalidad de las circunstancias para decretar si dicha sospecha era suficiente para incautar un objeto de una persona que alberga una expectativa de intimidad. Es decir, el Tribunal tiene que auscultar si ante la particularidad de los hechos, el registro no violentó la intimidad de la persona.

Al respecto, el Poder Legislativo creó la Ley Núm. 119-2011, *supra*, para establecer un proceso para garantizar el debido proceso de ley a las personas que se les confiscan bienes. Cuando ocurre una confiscación *in rem* es dirigida contra la cosa y no contra el dueño o persona con interés sobre el bien. Cuando el Estado confisca un bien le asiste una presunción de corrección y legalidad. Es meritorio resaltar que, una presunción es definida como "una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. A ese hecho o grupo de hechos previamente establecidos se les denomina hecho básico. Al hecho deducido mediante la presunción, se le denomina hecho presumido". Regla 301 de

Evidencia, *supra*, R. 301. Así pues, cuando el Estado incauta un bien es porque dicha propiedad fue empleada para fines ilícitos o para la comisión de delitos. Ante ello, le corresponde al demandante rebatir la presunción estatutaria y acreditar, mediante preponderancia de la prueba, que la propiedad confiscada no fue utilizada para realizar alguna actividad ilegal. *Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico, supra.* De no satisfacer el estándar probatorio, el Tribunal tiene el deber ineludible de dar por probado el hecho presumido. A esos fines, para que proceda una confiscación *in rem* deben concurrir los siguientes elementos: "(1) que exista prueba suficiente y preponderante de que se ha cometido un delito, y (2) que exista un nexo entre la comisión del delito y la propiedad confiscada". *Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico, supra.*

Como corolario de lo anterior, el 10 de mayo de 2024, la parte apelada estaba diligenciando una orden de registro y allanamiento en el apartamento del señor O'Neill Meléndez ante los motivos fundados de que este había infringido la Ley de Sustancias Controladas y la Ley de Armas.[26] Culminado el operativo, un can adiestrado para detectar drogas y armas, utilizado en el registro, cuando iba a ser dirigido al vehículo oficial, arrojó positivo al vehículo que estaba frente al apartamento del señor O'Neill Meléndez. [27] Surge de la transcripción de la prueba oral que, el can atravesó entre el carro confiscado y otro vehículo en dirección a ser guardado en su jaula cuando dio indicios de que en el carro había drogas y armas.[28] No obstante, los agentes que participaron en el operativo testificaron que el vehículo fue sellado, custodiado y no

---

[26] TPO, pág. 9; líneas 23-24; *Íd.*, pág. 10; líneas 1-9.
[27] *Íd.*, pág. 10; líneas 9-13; *Íd.*, líneas 18-22.
[28] *Íd.*, pág. 11; líneas 20-24; *Íd.*, pág. 12; líneas 1-2; *Íd.*, pág. 12; líneas 21-23; *Íd.*, pág. 14; líneas 16-22.

fue registrado hasta tanto un Tribunal emitiera una orden de registro y allanamiento.[29] Ciertamente, se desprende de la prueba oral que, la parte apelada no tenía previos motivos fundados para registrar el vehículo en cuestión. En adición, la parte apelada se percató que dicho vehículo contenía drogas y armas puesto que un can "pasó" entremedio del vehículo para dirigirse al vehículo oficial de la Policía toda vez que, el carro confiscado estaba estacionado frente al apartamento del señor O'Neill Meléndez. Tal como apunta la parte apelada, el can no atravesó entre los vehículos con la intención de incautar algo en este. Ello, pues de el can no haber cruzado entre los carros, la parte apelada no hubiese advenido en conocimiento acerca del material ilícito en el vehículo confiscado. Además, la parte apelada no incautó el vehículo hasta tanto recibió una orden con la anuencia de un Tribunal en la que le confirió autoridad a la parte apelada para registrar el vehículo. A esos efectos, si bien es cierto que un can arrojó positivo y existían motivos fundados para registrar el vehículo en controversia, la parte apelada procedió a sellar el vehículo y cumplir con las garantías constitucionales de buscar la expedición de una orden de registro y allanamiento en aras de registrar el vehículo. Es decir, la confiscación fue resultado de un can, entrenado para detectar drogas y armas, arrojar positivo al vehículo tras un registro en un apartamento del dueño del vehículo en el que se incautaron drogas y armas. Con ello, tras recibir la autorización judicial, entonces la parte apelada procedió a registrar el vehículo, en el que se encontró drogas y armas. Ciertamente, ante los hechos esbozados, resolvemos que, concurrieron los requisitos necesarios para que procediera la confiscación.[30] Al respecto, había prueba de que en el carro había material ilícito tras el can detectarlo y, había un nexo

---

[29] *Íd.*, pág. 48; líneas 10-13; *Íd.*, pág. 49; líneas 12-24 *Íd.*, pág. 50; líneas 1-2.
[30] *Véase, Cooperativa de Seguros Múltiples de Puerto Rico v. Estado Libre Asociado de Puerto Rico, supra.*

entre el vehículo confiscado y el delito toda vez que, en dicho vehículo se ocuparon armas y drogas. Como vemos, la parte apelante no logró presentar evidencia que nos persuadiera en determinar que derrotó la presunción que le asiste al Estado debido a que no presentó prueba suficiente para que esta Curia resolviera contrario a la evaluación de la prueba y la totalidad del expediente.

Es preciso aclarar que, en *Pueblo v. Díaz, Bonano, supra*, el Tribunal Supremo determinó que cuando un can arroja positivo a un bulto de una persona, en un lugar público, y dada las particularidades del citado caso, se permitió el registro de dicho bulto. Empero, en el caso de epígrafe, la parte apelada no registró el vehículo hasta tanto recibiera la anuencia de un Juez que determinara si procedía el registro del vehículo confiscado. Nos resulta forzoso concluir que, aunque el señor O'Neill Meléndez albergaba una expectativa de intimidad en cuanto a su vehículo de motor, el mencionado vehículo no fue registrado sin una orden judicial. Por tanto, no le asiste la razón a la parte apelante con respecto a su reclamo de que el registro fue uno ilegal.

Por otra parte, debemos brindar deferencia a la apreciación de la prueba oral sobre los testigos debido a que el foro primario estuvo en mejor posición que este Tribunal para valorar y apreciar los testimonios de los testigos en el juicio. En adición, tanto las determinaciones de hechos y la apreciación de la prueba oral merecen la credibilidad que ameritan ante la ausencia de pasión, prejuicio, parcialidad y abuso de discreción por parte del TPI.

A la luz de los fundamentos esbozados, confirmamos el dictamen apelado en virtud de que la parte apelada cumplió con las garantías constitucionales sobre los registros y allanamientos. También, la parte apelante no logró cumplir con el estándar probatorio requerido para derrotar la presunción que le asiste al Estado con relación a las confiscaciones que efectúa.

## IV.

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones